(65 App. Div. 326.)

## LAGUTTUTA v. CHISOLM et al.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. ANIMALS—KEEPING DANGEROUS DOG—INJURIES—PERSON LAWFULLY ON PREMISES—KNOWLEDGE OF OWNER—EVIDENCE—SUFFICIENCY.

In an action to recover for injuries from being bitten by defendant's dog, it appeared that defendant maintained a stable in which he rented stalls, and used the stable yard for the storage of trucks, and that he kept the dog on the premises, the animal being usually chained in the daytime; that plaintiff's father, who kept his horses and truck on the premises, sent the plaintiff there on business, and while there, and not in any way provoking the dog, plaintiff was bitten, the animal being unchained at the time; and that the dog had bitten a boy prior to this occurrence, of which defendant had notice. *Held*, that the question as to defendant's liability should have been submitted to the jury. Per Ingraham, Laughlin, Hatch, and Patterson, JJ.

2. SAME—OWNER OF PREMISES—LIABILITY—EVIDENCE.

Where plaintiff, while on certain premises which were occupied by a stable, was bitten by a dog belonging to the one who maintained the stable, and he sued such person and the owner of the premises, and it appeared that the owner of the dog rented stalls in the stable, and the owner merely received a certain proportion of the rents from the stalls, and it was not shown that he had any knowledge of the character of the dog, or that the same was kept under his direction, it was proper to direct a verdict in his favor. Per Van Brunt, P. J., and Ingraham and Laughlin, JJ.

3. SAME—EVIDENCE—SUFFICIENCY.

Where plaintiff was bitten by a dog, and sued the one who owned the dog and occupied the premises on which he was bitten, and also the owner of the premises and the occupant, and also the owner testified that the former rented the premises from the latter, a contention by plaintiff that, as the occupant was not worthy of belief, it was error to direct a verdict in favor of the owner, was without merit, since the fact that the occupant's testimony could be discredited would not justify a finding that the owner was the owner of or maintained the dog.

4. SAME—BURDEN OF PROOF.

Where one bitten by a dog sues to recover for the injuries, the burden of proving that defendant was responsible for the acts of the dog is on plaintiff.

Appeal from trial term, New York county.

Action by Andrew Laguttuta, an infant, by Joseph Laguttuta, his guardian ad litem, against George E. Chisolm and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed as to defendant Chisolm, and reversed as to the other.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

E. B. La Fetra, for appellant.

John M. Bowers, for respondent Chisolm.

Charles F. Hoffman, for respondent Wilson.

INGRAHAM, J. The action was brought to recover for the damages sustained by the plaintiff by reason of the bite of a dog owned by the defendant Wilson. There was no motion for a nonsuit at the end of the plaintiff's case, but after the evidence was all in the defendants moved for the direction of a verdict, which motion was granted as to both of the defendants. It seems that the defendant

Wilson was in possession of certain premises in East Eleventh street, in the city of New York, and owned and maintained upon the premises a watchdog, usually kept chained in the daytime. Upon these premises there was a stable, and Wilson rented stalls in this stable, and used the yard for the storage of trucks. He had entire charge of the premises, renting the stalls for horses and the yard for trucks, and, after deducting a percentage of the receipts, paid the balance to the defendant Chisolm, who was the owner of the premises, as compensation for the use of the premises for the purposes mentioned. This dog in question was owned and kept upon the premises by Wilson for his own purposes, as there is no evidence that Chisolm had any knowledge that the dog was there, or had anything to do with it. There was evidence to show that the dog had bitten a boy prior to the occurrence in question, of which Wilson had notice.

I think that the question as to Wilson's liability for the injury inflicted upon the plaintiff was one for the jury. The plaintiff's father kept his horses and truck upon the premises, and paid Wilson therefor. At the time in question he sent his driver to get this team and truck, and, as the driver did not speak English, he sent the plaintiff, a boy about 12 years of age, to act as interpreter. The boy was thus lawfully upon the premises, and while waiting in the yard for the driver to bring the horses from the stable was attacked by the dog, and severely injured. It was said that the boy had been warned before of the character of the dog, and was told not to come upon the premises; but the boy was upon the premises in connection with the lawful business carried on there, acting for his father, who, under contract with Wilson, had the right to go there, and the boy had no knowledge that at the time of the occurrence the dog was unchained, and did nothing to provoke the dog. There is nothing to show that the plaintiff voluntarily assumed the risk of being bitten by this dog, or that any act of his contributed to the injury. There was sufficient to justify the jury in finding that Wilson had knowledge that this dog was a dangerous animal. As was said in Brice v. Bauer, 108 N. Y. 432, 15 N. E. 695, 2 Am. St. Rep. 454, "the very purpose for which the defendant kept him [the dog] charges him with knowledge of his character, and he is therefore chargeable with negligently keeping him, although it had not appeared that he had actually bitten another person before he bit the plaintiff"; and the court cited with approval what was said in Buckley v. Leonard, 4 Denio, 500, that, "aside from proof that the defendant had notice of the dog's disposition, the fact that he usually in the daytime kept him confined, and in the night kept him in his store, is strong evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to go at large." It would seem, therefore, that the judgment directing a verdict in favor of the defendant Wilson should be reversed.

A different question is presented as to the liability of the defendant Chisolm. The relation between Chisolm and Wilson is not very clear, from the plaintiff's evidence. Wilson was called by the plaintiff, and testified that prior to the year 1898 he was in possession of the premises under an arrangement that he had with one

Cruikshank, who was then its owner; that when he first went there he went as a watchman at $20 a month, and that continued until a malt house which was upon the premises was torn down; that after the malt house was torn down there was no building upon the premises; that Wilson then made an arrangement with Cruikshank by which he (Wilson) was to use the property for storage, Wilson to receive 30 per cent. of the proceeds; that this arrangement continued until Chisolm bought the property, which seems to have been about the 29th of July, 1898; that after Chisolm bought the property he saw Wilson, and the arrangement that had theretofore existed was continued, Wilson remaining in possession of the property, and renting it out for storage purposes, and accounting to Chisolm for the amount that he collected, deducting 30 per cent. for his services; that some time after Chisolm became the owner of the property he built a stable thereon, and an arrangement was there made by which Wilson was to do his best to fill the stable, and store trucks in the yard, keep an account of the receipts, and take out his commissions, and pay Chisolm the difference, and that that was the arrangement upon which Wilson remained there; that at the end of each month he rendered an account to Chisolm, and paid him the amount due; that Wilson managed the property entirely, made the bargains with the people, did the best he could, and searched for business, and Chisolm did nothing in regard to the business, except that at the end of each month he received his proportion of the amount realized by Wilson for the use of the premises. Wilson further testified that he owned the dog, and kept him upon the premises for his own purposes. Chisolm was examined on the part of the defendant, and testified that he leased the premises to Wilson, who agreed to pay as rent therefor a percentage of the gross amount received for the use of the stable. It seems to me quite evident that, accepting either version of the relation that existed, Chisolm was not responsible for any injury that might be caused by this dog. The dog did not belong to him, and he had nothing to do with maintaining it upon the premises. It was not kept there to protect his property, or any interest that he had therein. His sole interest in the property was that of owner, and he was only interested in receiving a portion of the rents obtained therefrom. The protection of this piece of land certainly did not require the presence of a savage dog, and Wilson did not occupy the position of a servant or employé who was intrusted by Chisolm with the care of this dog. Thus, Chisolm never owned the dog, had no knowledge that it was kept upon his premises, authorized no one to keep a dog there, had no relation or connection with the keeping of the dog, or any knowledge that a dangerous dog was maintained upon the premises. The foundation of this action is negligence, and no recovery has been sustained in any of the cases to which our attention has been called without proof that the vicious animal was owned or maintained by the person liable for his acts.

The case of Marsh v. Hand, 120 N. Y. 315, 24 N. E. 463, seems to be directly in point. That case was to recover damages for an injury caused by a buck sheep which made an attack on the plaintiff

and the court held that the evidence was sufficient to charge the owner of the sheep with liability for the damage sustained by the plaintiff. It appeared that the defendant Hand was the owner of the farm and certain stock; that he surrendered the entire control of the stock to one Cumber, who undertook to take care of it; and that Cumber, as well as Hand, had an interest in the stock; but the ram which did the injury complained of was not left upon the farm by the defendant Hand, or put there by him. It was purchased by Cumber after he went into occupancy, of which fact Hand had no notice. It was contended that the trespass and injury was the result of the negligence of Cumber, and for his negligence Hand was liable; but it was held that that proposition could not be supported, on the ground that he was their servant; that no such relation arose from the contract. The court say:

"Here Cumber, by the contract, undertook to occupy and work the farm and manage the stock left there in his own way, with a view to results, and without any contribution of the defendants Hand to the service, with the performance of which they had nothing to do. The practical effect of the contract was that the executors should have a share of the products by way of compensation for the use of the property, and that Cumber was entitled to the other share as compensation for his labor in performing the contract. No negligence of the latter in the performance of the work to the prejudice of third parties could charge the Hands with liability."

This precise relation is presented in this case. Wilson undertook to manage this property, and procure as much as possible for it, the proportion paid to Chisolm being the compensation that he was to receive for the use of his property, and for the negligence of Wilson in maintaining upon the premises a ·vicious dog Chisolm was not responsible.

The plaintiff claims that the testimony of Wilson as to his relation with Chisolm was not entitled to credit, but Wilson was called as a witness by the plaintiff, and, assuming that his testimony was not to be believed, we have no evidence as to Chisolm's relation to the property, except his own, which was that he leased the property to Wilson. The fact that Wilson's testimony could be discredited would not be evidence to justify a finding that Chisolm was the owner of or maintained this dog. To entitle the plaintiff to recover against Chisolm, he had the burden of proving that Chisolm was responsible for the acts of the dog. Either with or without Wilson's testimony, there is not a particle of evidence that would justify a finding of Chisolm's liability.

It follows that a direction of a verdict in favor of Chisolm was. correct, and should be affirmed; that the judgment for the defendant Wilson should be reversed, with costs to the plaintiff against Wilson to abide the event; and the judgment in favor of Chisolm affirmed, with costs against the plaintiff.

LAUGHLIN, J., concurs. VAN BRUNT, P. J., concurs as to defendant Chisolm.

HATCH, J. This action was brought to recover damages for personal injuries alleged to have been sustained by Andrew Lagut-

tuta, an infant nine years of age, from the bite of a vicious dog. It is averred in the complaint as a cause of action that at the times therein mentioned the defendant Chisolm carried on, or caused to be carried on, at the premises therein described, a livery and boarding stable for the boarding of horses and storage of vehicles; that the defendant Wilson was employed by said Chisolm as manager of said stable, and therein' was, at all the times mentioned in the complaint, the agent, servant, and respresentative of said defendant Chisolm; that the defendant Chisolm was the owner of, and the defendants both maintained, or caused to be maintained, at and about said premises, a dog of a ferocious, vicious, mischievous, and dangerous disposition, and accustomed to attack and bite people, of which the defendants had knowledge, notwithstanding which they wrongfully kept and maintained at large, in and about the premises and adjacent land used by defendants in said business, said dangerous animal, which they neglected and omitted, contrary to their duty, to have and keep properly confined and chained, thereby creating and maintaining a nuisance; that, while lawfully upon the premises so occupied by the defendants, this dog, without any cause or provocation, suddenly and viciously attacked the plaintiff, and severely bit and injured him, scarring and disfiguring him for life, and inflicting other permanent injuries, for which damage is claimed in the sum of $10,000. The defendant Chisolm by his answer alleges that he leased the premises to Wilson; denies the ownership and maintenance or harboring of the dog, knowledge of its vicious propensities, and all the material allegations showing liability on his part. The defendant Wilson also denies all the material allegations of the complaint tending to establish liability on his part, and both defendants aver that the plaintiff's injuries were caused by his own negligence, or by the negligence of third persons, over whom the defendants had no control. At the close of the evidence the court dismissed the complaint as to both defendants, to which counsel for the plaintiff excepted, and asked to go to the jury upon various questions of fact, viz. as to the viciousness of the dog; as to whether or not Wilson was in the employ of Chisolm; as to whether there was or was not a lease from Chisolm to Wilson; as to whether or not there was warning given to the plaintiff of the character of the dog, such as would defeat his action; on the question of contributory negligence; and on the question of damages. These motions were denied, to which ruling counsel for plaintiff took an exception. Motion was then made in behalf of the plaintiff for a new trial, which was also denied, and from the judgment entered, and from the order denying the motion for a new trial, this appeal is taken.

It is clear beyond dispute that the question of Wilson's liability for the injuries inflicted by the dog presented a question of fact for the jury. The evidence was abundant to show that Wilson was the owner of the dog; that he kept the dog upon the premises; and that the dog had, prior to the time when he bit the plaintiff, bitten one or more other persons. As to Wilson, therefore,. there was every element in the case from which the jury would have been

authorized to find that he was responsible for injuries by this dog, unless he was relieved therefrom by the misconduct of the person who received the injury. As to the defendant Chisolm the case is somewhat different. It was conceded that he was the owner of the premises, but the claim was made that he had leased them to Wilson, and that Wilson had sole charge of the premises as lessee, and that Chisolm was not connected therewith, and had no control, either over Wilson or the premises, at the time when the dog was kept thereon and when he bit the plaintiff. If this were conclusively established, then it follows that Chisolm was relieved from liability for the act of the dog. The case comes, therefore, to rest, in the main, upon the question as to whether Wilson was the mere agent and servant of Chisolm, or whether he was the lessee having sole control of the premises. It appears that Chisolm purchased the premises, consisting of a stable, at a foreclosure sale. It is not claimed that Chisolm ever executed any written lease of the premises to Wilson. The evidence upon the part of the plaintiff tended to establish that after the purchase Wilson took charge of the stable under an arrangement with Chisolm by which he was to rent stable room to persons desiring such accommodation, collect the moneys therefor, and pay the same over to Chisolm, less a certain percentage, which he retained as his compensation. At first Wilson was authorized to retain 30 cents on the dollar as his commission, as he expressed it, and subsequently Chisolm refused to allow that amount, and reduced it to 15 cents on the dollar. During the whole period Wilson collected the money and paid it over to Chisolm under this arrangement, and these were the terms under which Wilson had the custody and control of the premises in question. It is quite evident that upon this testimony the jury would have been authorized to find that Wilson was a mere agent of Chisolm to rent the premises to persons for stabling accommodations, collect the rents, and pay them over to Chisolm, and that, in fact, the relation of landlord and tenant did not exist between these parties. If the jury had found such to be the fact, as they might upon the testimony, then it would follow that Wilson's possession of the property was the possession of Chisolm, and that the former was simply his agent. Under such circumstances, Chisolm would be chargeable with knowledge that the dog was harbored upon the premises, and also with knowledge of his vicious propensities, if it was found that Wilson possessed such knowledge, or that the dog had bitten other people. Quilty v. Battle, 135 N. Y. 201, 32 N. E. 47, 17 L. R. A. 521; Keenan v. Manufacturing Co., 46 Hun, 544; Muller v. McKesson, 73 N. Y. 195, 29 Am. Rep. 123.

It is quite evident that Wilson had notice, at least the jury might so find, that the dog had bitten one or more persons prior to his biting the plaintiff, and he had caused to be put upon the premises a notice to beware of the dog. If Wilson was Chisolm's agent, his knowledge became that of his principal, and, with that relation established as the jury might find it under the evidence, every element would be present charging Chisolm with liability for the injury which the dog inflicted. I am of opinion, therefore, that the plain-

tiff made a case entitling him to go to the jury as to the liability of both defendants, and upon the questions upon which he requested to go to the jury. The plaintiff was not chargeable with contributory negligence as matter of law. That also became a question for the jury. Zwack v. Railroad Co., 160 N. Y. 362, 54 N. E. 785; Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712. If the negligence of the parent could be imputed to the child, it was still a question of fact, under all the circumstances of the case, as the jury might well find that in committing the boy to the custody of the driver they were not negligent.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, J., concurs.

VAN BRUNT, P. J. I dissent. I do not think that any case was made out against either defendant.