■ BRIAN STRUNK et al., Respondents, v JOSEPH ZOLTANSKI, Defendant, and SOPHIE ZOLTANSKI, Appellant. — In a negligence action to recover damages for personal injuries, etc., defendant Sophie Zoltanski appeals from so much of an order of the Supreme Court, Orange County (Rosenblatt, J.), dated May 3, 1982, as denied that branch of defendants' motion for summary judgment as sought dismissal of the complaint as against her. Order affirmed, insofar as appealed from, with costs. On May 8, 1979, the infant plaintiff, while an invitee on certain leased premises, was bitten on his mouth and arm by a German Shepard harbored by appellant Sophie Zoltanski's tenant. Thereafter, the infant's mother commenced a negligence action on behalf of her infant son to recover for his personal injuries and on her own behalf to recover for loss of his services. Plaintiffs' pleadings and affidavits in opposition to defendants' motion for summary judgment pursuant to CPLR 3212 allege that appellant, the absentee landlord and owner of the demised premises, had actual knowledge prior to leasing the premises to her tenant that said tenant owned a dog with vicious propensities and, notwithstanding this knowledge, allowed the tenant to harbor said dog on the leased premises. Appellant denies these allegations. The branch of the motion for summary judgment which sought dismissal of the complaint as against appellant was based on the premise that assuming, *arguendo,* an issue of fact did not exist with respect to actual knowledge, the complaint would have to be dismissed because it fails to state a cognizable cause of action against her. We disagree. The law of this State generally has precluded a landlord's liability for injuries to his tenant's invitees from a dangerous condition or nuisance on the demised premises which comes into existence after the tenant has taken possession (see *Kilmer v White,* 254 NY 64, 69). The rationale for this rule is grounded in property law, which regards a lease as equivalent to a sale of the land for the term of the lease (see Restatement, Torts 2d, § 355, Comment *a*). In the absence of an agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee, retaining only a reversionary interest (Prosser, Torts [4th ed], § 63, p 400). Consequently, court decisions which have precluded the imposition of liability on a landlord for injuries to a third person occasioned by a vicious or dangerous animal kept by a tenant on the leased premises were based upon either the landlord's absence of control over the leased premises (see *Zwinge v Love,* 37 AD2d 874; *Theobald v Grey Public Relations,* 39 AD2d 902; *Simpson v Griggs,* 58 Hun 393; *Denagy v Doscher,* 40 Misc 2d 643; cf. *Siegel v 1536-46 St. John's Place Corp.,* 184 Misc 1053; Landlord's Liability to Third Person for Injury resulting from Attack by Dangerous or Vicious Animal Kept by Tenant, Ann., 81 ALR3d 638), or lack of actual knowledge of the animal and its dangerous proclivities (see *Laguttuta v Chisolm,* 65 App Div 326, 330). Absent an allegation that the landlord was in control, the landlord's actual knowledge of any vicious propensity on the part of the animal, where said knowledge was acquired after the initial letting, is immaterial. Unlike the afore-noted cases, the alleged facts in this matter, if proven at trial, could support a finding that the appellant had prior actual knowledge that a prospective tenant intended to harbor a dog with vicious propensities at the inception of the leasehold. At such a time the landlord would still retain a measure of control over the leased premises, and by the exercise of reasonable care, could obviate a reasonably foreseeable risk of injury to the third persons lawfully upon the leased premises by the simple expedient of refusing to lease

to the prospective tenant or by imposing a condition on the lease prohibiting the harboring of said animal on the demised premises. Under such circumstances, the law may impose a duty upon the landlord to exercise ordinary care to keep the leased premises in a safe condition on behalf of third parties and the failure to exercise such care may result in liability. Since plaintiff alleges the necessary elements of control and actual knowledge to bring this case outside the ambit of the general rule, a cognizable cause of action is stated against appellant and a trial is required to resolve the factual issues. Bracken, J. P., Brown and Boyers, JJ., concur.

Rubin, J., dissents and votes to reverse the order insofar as appealed from, on the law, and to grant summary judgment to appellant, with the following memorandum. The majority decision results in a major and unwarranted extension of landlord tort liability in New York to which I cannot subscribe. At common law it is the general rule that the owner of land ceases to be liable in negligence for its condition or use when the land passes out of his possession and control before injury results (*Pharm v Lituchy,* 283 NY 130, 132; *Cullings v Goetz,* 256 NY 287; *Kilmer v White,* 254 NY 64). In the absence of any special relationship, the majority creates a duty on the part of a landlord to protect third parties, on premises which are in the exclusive possession and control of a tenant, from the tenant's future negligent act. By the mere act of renting his property to a tenant who owns a dog known to the landlord to be potentially vicious, the landlord will owe a duty of care to third parties, who are on the premises at the express or implied invitation of the tenant, to protect them from future injury caused by that dog. This holding is contrary to established law. The general rule holds that a person who owns, harbors, or keeps a dog with known vicious propensity is liable for any injuries caused by that dog (*Muller v McKesson,* 73 NY 195; *Brice v Bauer,* 108 NY 428; *Quilty v Battie,* 135 NY 201, 204). However, New York has repeatedly refused to extend that liability to a landlord who merely leases realty to the owner, harborer or keeper of such an animal (see *Zwinge v Love,* 37 AD2d 874; *Theobald v Grey Public Relations,* 39 AD2d 902, 903, involving an inherently dangerous animal — a lion; *Simpson v Griggs,* 58 Hun 393; *Denagy v Doscher,* 40 Misc 2d 643, landlord knew of tenant's vicious dog; cf. *Siegel v 1536-46 St. John's Place Corp.,* 184 Misc 1053, landlord retained control of "common stairway" of apartment building where dog bite occurred; Landlord's Liability to Third Person for Injury Resulting from Attack by Dangerous or Vicious Animal Kept by Tenant, Ann., 81 ALR3d 638, 641, 643). The criterion to determine a landlord's liability focuses on his "control" over his property. Only if the landlord is in a ⁀osition to prevent the harm complained of can he be held to have a duty to do so (see *Siegel v 1536-46 St. John's Place Corp.,* 184 Misc 1053, supra). At bar, it is not alleged that at the time of the injury the landlord in any way controlled the tenant, or the dog, or any part of the property where the dog was kept. The majority's novel argument suggests that the landlord retained "a measure of control" over the property by virtue of the fact that he could refuse to enter into a lease with the tenant or, in the alternative, impose a condition prohibiting the keeping of the vicious dog on the property. However, a dog is not a nuisance per se nor is a dog an inherently dangerous animal. A dog with vicious propensities only becomes dangerous or a nuisance when not properly restrained or guarded (see *Muller v McKesson,* 73 NY 195, supra; Dogs as Nuisance, Ann., 79 ALR 1060). Where an injury is directly caused by the tenant's negligence in harboring the animal, an absentee landlord is not answerable for the acts of the tenant absent a duty imposed upon him (cf. *Palsgraf v Long Is. R. R. Co.,* 248 NY 339). And, a duty to prevent negligence should not be imposed on a landlord who does not control the tenant tort-feasor (cf. *Pulka v Edelman,* 40 NY2d 781, 783; *Fessler v Brunza,* 89 AD2d

640). The majority reasons that this duty should be imposed on the theory that a vicious dog poses a reasonably foreseeable risk to third parties. However, "[f]oreseeability should not be confused with duty. The principle expressed in *Palsgraf v Long Is. R.R. Co.* (248 NY 339, supra) * * * is applicable to determine the scope of the duty — only after it has been determined that there is a duty. Since there is no duty here, that principle is inapplicable" (*Pulka v Edelman,* 40 NY2d 781, 785, *supra*). A landlord is not legally responsible for the conduct of his tenant merely because it is foreseeable that the tenant might act negligently sometime in the future. A landlord is not an insurer of his tenant's safety much less the safety of people his tenant invites on to the leased property (cf. *Bennett v Ames,* 77 AD2d 390, 392). Plaintiff has legal recourse in negligence against the owner of the dog so he is not without a remedy. To hold that he is similarly entitled to protection from the landlord for the conduct of the tenant, where plaintiff's injury was not the result of any act or omission for which the defendant landlord was responsible apart from his failure to exclude the dog from the premises, is to create an unnecessary and far-reaching extension of duty beyond the limits required under the law of negligence. For the above-stated reasons, the order of the Supreme Court should be reversed insofar as appealed from, on the law, and that branch of defendants' motion for summary judgment, which sought dismissal of the complaint as against appellant should be granted.